UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KIM E HUNT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-11-261 |
| | § | |
| BAC HOME LOANS SERVICING, LP, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER ON MOTIONS TO DISMISS</u>

This case comes before the Court on Motions to Dismiss filed by Defendants Bank of America, N.A., successor by merger to BAC Home Loans Servicing, L.P. (BANA) and Federal Home Loan Mortgage Corporation (Freddie Mac) (D.E. 13) and Barrett, Daffin, Frappier, Turner & Engel, L.L.P. (Barrett Daffin) (D.E. 15).   Each motion seeks dismissal of Plaintiff's causes of action pursuant to Fed. R. Civ. P. 12(b)(6) as failing to state claims upon which relief can be granted.   As set out more fully below, the Motions (D.E. 13, 15) are GRANTED IN PART (with respect to the Plaintiff's DTPA claim) and DENIED IN PART (with respect to Defendant Barrett Daffin's immunity defense).   Plaintiff is GRANTED LEAVE TO AMEND her Complaint regarding the other causes of action and the Court takes the motions UNDER ADVISEMENT with respect to those causes of action.

## JURISDICTION

This case includes claims against Freddie Mac, which has been designated as a federal agency under 12 U.S.C. § 1452(f).  Claims against Freddie Mac are deemed to

arise under the laws of the United States, with federal question jurisdiction in this Court conveyed by 28 U.S.C. § 1331.  Removal to federal court is specifically authorized by 28 U.S.C. § 1442.

## INTRODUCTION

Plaintiff sues her mortgage servicing company and its attorneys for foreclosing on her homestead pursuant to a home equity loan.  She alleges that those Defendants sent improper or misleading notices of foreclosure to her.  She also alleges that they represented that they would work with her on a modification of her loan when, in reality, they were proceeding with foreclosure.  In reliance on their representations, Plaintiff did not take action to stop the foreclosure.  She alleges (1) wrongful foreclosure; (2) fraud; (3) violations of the Texas Debt Collection Act, with violations of the Texas Deceptive Trade Practices Act pursuant to tie-in provisions; and (4) breach of contract.  She also seeks cancellation of the foreclosure sale and deed against the buyer, Defendant Freddie Mac, in order to avoid eviction.  Defendants claim that Plaintiff's amended complaint does not state a claim upon which relief can be granted.

## STANDARD OF REVIEW

The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966 (2007).  The *Twombly* court expressly "retired" the old test stated in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957) that a complaint would not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief." *Twombly*, 127 S.Ct. at 1969 (quoting *Conley, supra*). The revised standard for determining whether a complaint states a cognizable claim has been outlined by the United States Supreme Court in *Twombly, supra* and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, "Pleadings must be construed so as to do justice." Rule 8(e). The requirement that the pleader "show" that he is entitled to relief has been construed to require "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 127 S.Ct. at 1965. Those factual allegations must then be taken as true, even if doubtful. *Id*. In other words, the pleader must make allegations that take the claim from "conclusory" to "factual" and beyond "possible" to "plausible." *Id*., 127 S.Ct. at 1966. The *Twombly* court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1974.

The Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

3 / 21

*Id.*  In dismissing the claim in *Iqbal*, the Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."  127 S.Ct. at 1951.

With respect to affirmative defenses, *Twombly* did not relieve defendants of their burden of production and persuasion.  *Davis v. Indiana State Police*, 541 F.3d 760, 763 (7th Cir. 2008).  With respect to an affirmative defense, dismissal at the 12(b)(6) stage is proper only where it is evident from the complaint itself that the action is barred.  *Jones v. Alcoa, Inc*., 339 F.3d 359, 366 (5th Cir. 2003).

Allegations of fraud are further governed by Fed. R. Civ. P. 9(b):  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  More specifically,

> This Circuit has held that "the Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005) (citing *Nathenson v. Zonagen*, 267 F.3d 400, 412 (5th Cir. 2001)). "What constitutes 'particularity' will necessarily differ with the facts of each case and hence the Fifth Circuit has never articulated the requirements of Rule 9(b) in great detail," but "has found that the plaintiff must allege with particularity 'the defendant's acts [which] the plaintiff contends amount to fraud.'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) (quoting *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986)).

*Brown v. Bilek*, 401 Fed.Appx. 889, 894, 2010 WL 4561397, 4 (5th Cir. 2010).  State law fraud claims are subject to the federal heightened pleading requirements.  *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010).

## FACTS

Because this case comes before the Court on motions to dismiss, the facts of the case have not been fully developed and the recitation here is based on the allegations of the Plaintiff's Complaint, accepted as true.  Included are facts revealed by documents referenced in, and thereby incorporated into, the Complaint.  *Scanlan v. Tex. A&M Univ*., 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Those documents were supplied by the parties with their motions to dismiss and responses thereto.

On or about March 27, 2008, Plaintiff entered into a home equity loan with Countrywide Bank, FSB, mortgaging her homestead in Portland, San Patricio County, Texas.  The loan was assigned to BANA, acting as the mortgage servicer.  Some time before May, 2009, Plaintiff defaulted on her loan, causing Defendant BANA to send her its May 18, 2009 letter constituting notice of default with an opportunity to cure.  D.E. 13-1/15-1.  That notice states,

> If the default is not cured on or before June 17, 2009, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time.  As such, the failure to cure the default may result in the foreclosure and sale of your property.
>
> . . .

If you are unable to cure the default on or before June 17, 2009, BAC Home Loans Servicing, LP wants you to be aware of various options that may be available to you through BAC Home Loans Servicing, LP to prevent a foreclosure sale of your property.  For example:

- Repayment Plan:  It is possible that you may be eligible for some form of payment assistance through BAC Home Loans Servicing, LP.  Our basic plan requires that BAC Home Loans Servicing, LP receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time.  Other repayment plans also are available.

- Loan Modification:   Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance.  This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property . . . .

- Deed-in-Lieu . . . .

If you are interested in discussing any of these foreclosure alternatives with BAC Home Loans Servicing, LP, you must contact us immediately.  If you request assistance, BAC Home Loans Servicing, LP will need to evaluate whether that assistance will be extended to you.  In the meantime, BAC Home Loans Servicing, LP will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing.  Failure to bring your loan current or to enter into a written agreement by June 17, 2009 as outlined above will result in the acceleration of your debt.

*Id.*, pp. 4-5.

On July 30, 2009, Defendant Barrett Daffin, representing Defendant BANA, sent

Plaintiff a letter constituting notice of acceleration.  D.E. 13-1/15-2.  In that letter, Barrett

Daffin represented that it was a debt collector and was authorized to collect the debt and to administer any resulting foreclosure of the property securing the loan.  *Id*.  It further asserted that the full amount of the accelerated indebtedness was $428,838.33.  Included in the notice of acceleration was the following admonition:

> The law does not require this firm to wait until the end of the thirty-day period before taking action to collect the Debt.  If, however, you have requested verification of the Debt or the name and address of the original mortgagee within the time stated above, this firm will cease collection activities until such requested information has been mailed to you.

*Id*.  Simultaneously, Defendant Barrett Daffin sent Plaintiff a separate letter that states, "foreclosure has been initiated . . . .  In connection with the foreclosure, a Notice of Substitute Trustee's Sale was mailed to you by our firm on July 30, 2009 [the date of the notice of acceleration and of the instant letter] (see copy enclosed)."  D.E. 19-1/20-1.

Additionally:

> BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP has asked us to make you aware of certain Homeowner Assistance alternatives that may be available for you to remedy the default status of your loan, including Repayment Plans, Forbearance Agreements, Deeds in Lieu of Foreclosure, and Loan Modifications.
>
> In order to be considered for any of these alternatives, it is necessary for you to fully complete and return the following information to our firm.  We must receive the information prior to the scheduled foreclosure date set out in the attached Notice.

*Id*.  That letter further identifies Defendant Barrett Daffin as subject to the Fair Debt Collection Practices Act.  *Id*.  Enclosed with the letter is a "Notice of Substitute Trustee

Sale" filled out in every particular except for the date of the sale (although the time of day for the sale is listed), the property description (stated as attached exhibit "A," which is not attached), and a signature. *Id*.

While not specifying when, Plaintiff claims that she applied in writing for a loan modification. She further alleges that she did not receive a written notice that her application had been denied.

Plaintiff alleges that sending notices[1] of foreclosure prior to obtaining the prerequisite order, which order is required when foreclosing on a homestead, constitutes a (1) threat to take an action prohibited by law, (2) misrepresentation of the character, extent or amount of a consumer debt, or (3) misrepresentation of the consumer debt's status in a judicial or governmental proceeding.

Defendants obtained the required foreclosure order from the 156th District Court of San Patricio County, Texas in cause number S-09-5821-CV-B some time after September 24, 2009, when it filed the lawsuit to obtain the order. Defendants posted the property for foreclosure to take place on January 5, 2010, but that foreclosure sale was canceled. Defendants then posted the property for foreclosure to take place on September 7, 2010. According to Plaintiff, she spoke with someone representing Defendant BANA, who specifically promised her that the sale would be postponed. Plaintiff relied on that promise and did not take any action to prevent the September 7, 2010 foreclosure.

---

[1]   Plaintiff alleges that a separate notice of foreclosure was sent prior to July 30, 2009, but no such notice is attached to the pleading or offered as an exhibit to the response to the Defendants' motions to dismiss.

On September 7, 2010, Defendant BANA foreclosed its lien on Plaintiff's homestead, allowing Defendant Freddie Mac to bid a "grossly inadequate" price. Plaintiff alleges that Defendants acted in violation of the law in order to chill the bidding process and to prevent her from stopping the foreclosure. She also alleges that Defendants were not authorized to foreclose while the loan modification request was pending.

## DISCUSSION

Defendants first suggest that Plaintiff has misconstrued the documents sent to her and, thus, her entire premise is misplaced. Defendants claim that Plaintiff did not receive any "notices of foreclosure" but instead received a notice of default and a notice of acceleration. A plain reading of the three documents supplied by the parties shows that Plaintiff received one notice of foreclosure in addition to the notices of default and acceleration. Plaintiff also alleges having received another notice of foreclosure before the date of the second one, which was the only one produced. Thus the Defendants' challenge to the Plaintiff's understanding of the facts is rejected. Her claim is based on allegedly fraudulent notices of foreclosure, not on the notice of default or notice of acceleration.

### 1. Wrongful Foreclosure

The Defendants' challenges to Plaintiff's wrongful foreclosure cause of action are based, first, on the erroneous argument that Plaintiff received notices of default and acceleration rather than notices of foreclosure. Because, factually, that argument is incorrect, it cannot serve as the basis for a dismissal of any claim.

Second, the Defendants argue that a claim for wrongful foreclosure must state (1) a procedural defect in the foreclosure proceedings, (2) a grossly inadequate selling price, and (3) a causal link between the procedural defect and the selling price. *See generally, Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (discussing *American Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 587 (Tex. 1976))).  Plaintiff's pleading, accepted as true, indicates that Defendants sent premature and incomplete notices of foreclosure and promised not to foreclose, both of which could constitute a procedural defect in the proceedings.

Fleshing that out in response to the motions to dismiss, Plaintiff points out that the Notice of Substitute Trustee's Sale, attached to the response, was not signed, contained no sale date, bore no property description, and was sent before the court order authorizing foreclosure had been issued, making it invalid.  Furthermore, Plaintiff asserts that federal regulations prohibit foreclosure if a loan modification has been requested and has not been denied in writing.  Plaintiff has satisfied the first requirement to allege a procedural defect in the foreclosure proceedings.

Plaintiff alleges that these tactics were used to chill the bidding process and prevent her from stopping the sale.  This is characterized as "intimidation tactics" in Plaintiff's response.  She asserts that she relied on Defendants' false promises and took no action to protect her property from foreclosure.  These allegations, relating the procedural defects to damages, satisfy the third element.

With respect to the second element, Plaintiff states in conclusory terms that the selling price was "grossly inadequate."  Plaintiff's argument is that the typical elements of wrongful foreclosure should not apply to this case where statutory or regulatory violations allegedly occurred.  Yet Plaintiff has not set out any specific authorities supporting either a claim for regulatory violation or that such a claim bypasses the need to allege and prove a grossly inadequate sale price.  Absent a fully developed record on this issue, the Court declines to make it the basis of its ruling.

Alternatively, Plaintiff has requested leave to amend to provide a more specific and factual allegation regarding the sale price.  Plaintiff's request for leave to amend on this basis is GRANTED.  Plaintiff is directed to provide pleadings on this issue that satisfy Fed. R. Civ. P. 8, *Twombly, supra* and *Iqbal, supra*.  If some or all of the necessary facts cannot be pled without discovery from Defendants because the information is not available to the Plaintiff, Plaintiff must so state.

### 2.  Fraud

Defendants argue that Plaintiff's fraud claims must be dismissed because they were authorized to foreclose and because Plaintiff's pleadings do not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  While the necessary order authorizing foreclosure may have been issued, the satisfaction of that requirement is not the basis for the Plaintiff's fraud claims.  Instead, she bases her claims on the incomplete and premature notice(s) of foreclosure, the alleged false promise to cancel the foreclosure, and the violation of other, unnamed, regulations.  The issuance of the

foreclosure order, therefore, does not absolve Defendants of the fraud allegations or mandate the dismissal of the claim.

However, fraud is subject to heightened pleading requirements. Fed. R. Civ. P. 9(b). Plaintiff states that allegations of time and place should not have to be pled with specificity. She further argues that she should not be required to plead every fraudulent act with particularity—that the parties know what they did and do not need pleadings to put them on notice. This argument, while charming, is not persuasive. Plaintiff further argues that she has, in fact, alleged fraud with sufficient particularity.

Unfortunately for Plaintiff, the specificity requirements are stringent. "To plead fraud adequately, the plaintiff must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Sullivan, supra* at 551 (citation and internal quotation marks omitted); *KLLM Transport Services v. Marsh USA, Inc*., 2011 WL 5838706, *3 (5th Cir. 2011). In other words, under Rule 9(b), a plaintiff must include the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir.1999) (quotation and internal citations omitted) (alteration in original). Plaintiff is GRANTED leave to amend to assert her claims of fraud with the requisite specificity.

### 3. Texas Debt Collection Act/Deceptive Trade Practices Act

Defendants first complain that Plaintiff cannot recover for violation of debt collection regulations because foreclosure is not "debt collection." Plaintiff argues that

the letters, themselves, indicate that Defendants are "debt collectors."   Given the language of the letters and the additional effort to draw Plaintiff into an alternative means for paying the debt, the Court agrees that the efforts of the Defendants were not limited to foreclosure of the lien.  The facts alleged in this case distinguish it from those in *Bergs v. Hoover, Bax & Slovacek, L.L.P.*, 2003 WL 22255679, *5-6, No. 3:01-CV-1572-L (N.D. Tex. Sept. 24, 2003).  Defendants have not established to the Court's satisfaction that the pleading fails to provide a plausible claim that they are debt collectors under the law of Texas based on the efforts expended with respect to the Plaintiff.

Defendant BANA further claims to be exempt from the definition of "debt collector" as it is a mortgage servicing company.  The claimed exemption is derived from the Fair Debt Collection Practices Act, a federal law.  *See generally, Singha v. BAC Home Loans Servicing, LP*, No. 4:10-cv-692, 2011 U.S. Dist. LEXIS 78727 (E.D. Tex June 1, 2011) (Magistrate Judge Report and Recommendation).  Here, the cause of action is stated only with respect to the Texas Debt Collection Act (TDCA) and the Court is not convinced that any federal exclusion applies to the Texas Act.  No such exclusionary language is contained in the definition of "debt collector" in Tex. Fin. Code § 392.001(6).

Next, Defendants assert that Plaintiff failed to allege any plausible claim of a TDCA violation that is related to any damages.  While the Plaintiff does not allege violations with reference to specific TDCA sections, the Court does not read the pleading requirements of Rule 8, *Twombly*, and *Iqbal* to require that type of correlation in the pleadings.  Rather, the question is whether, taken as true, the allegations indicate conduct that is violative of the act.

The Plaintiff elaborates in her Response that the allegations state Defendants' threat to take action prohibited by law and misrepresentation of the consumer's debt status.  Construing the pleadings in favor of Plaintiff as the Court must, the transmittal of a premature and incomplete notice of foreclosure and pursuit of a foreclosure order and sale when a modification has been requested and promises not to foreclose have been made, appear to allege violations of Tex. Fin. Code § 392.304 to the Plaintiff's detriment. The Court does note, however, that greater specificity in the allegations as well as the statutory provisions allegedly violated would be helpful to the parties in both prosecuting and defending this case.  Nonetheless, the lack of such specificity is not fatal to the claims at this time, particularly due to the Court's decision to grant leave to amend.

Last with respect to this category of claims, the Defendants assert that Plaintiff has not pled that she is a "consumer" in order to qualify for relief under the Deceptive Trade Practices Act.  Citing *Marquez v. Fed. Nat'l Mtg. Ass'n*, No. 3:10-CV-02040-L, 2011 U.S. Dist. LEXIS 94948 (N.D. Tex. August 23, 2011), Defendants claim that Plaintiff did not seek a good or service from them.  The *Marquez* opinion states, "A person who only seeks to borrow money is not a consumer, within the meaning of the DTPA, because lending money involves neither a good nor a service. *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984)."

The *La Sara Grain Co.* opinion still appears to be good law for the proposition that one who seeks a loan is not a consumer because any services provided by the bank in administering the loan are incidental and are not the primary objective of the transaction. While Plaintiff appears to disagree with this analysis and states that *Marquez* is

distinguishable, the Response is devoid of any reasoning or authorities.  Plaintiff's conclusory statement is not persuasive.  Plaintiff's assertion that state law applies to the definition of consumer status is consistent with, and thus does not require denial of, the Defendants' briefing, which involves a federal court's application of Texas state law. Thus Defendants' motions to dismiss are GRANTED with respect to the DTPA claim.

### 4.  Breach of Contract

Defendants challenge Plaintiff's breach of contract claim on several bases:  (1) any claim of breach of an oral promise violates the statute of frauds (Tex. Bus. & Comm. Code § 26.02(b)) as the transaction exceeds $50,000; (2) a written contract can only be modified in writing; (3) any promise not to foreclose would be unilateral and unenforceable; (4) there is no consideration paid by Plaintiff in exchange for any promise not to foreclose.  Defendant Barrett Daffin adds the argument that any promise was made by BANA, not Barrett Daffin.

Plaintiff offers only three arguments in response:  (1) the Plaintiff's request for modification was in writing; (2) the request for modification incorporates the (unspecified) regulations into the contract; and (3) the Defendants' conduct is such that they should be treated alike.  These conclusory arguments, even if correct, are insufficient to overcome the Defendants' reasons to dismiss the breach of contract claim.  Neither has the Court's own reading of the Second Amended Complaint found allegations to overcome the motions to dismiss the contract claim.

It is elementary that a contract action requires proof of a meeting of the minds and mutuality of consideration. *E.g., Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex.

2007); *Texas Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970).  Plaintiff's factual pleadings and the documents produced in connection with the motions to dismiss do not supply any basis for these elements.  Leave to amend is GRANTED to Plaintiff with the caution that any new allegations must be sufficient with respect to facts or law to overcome the Defendants' arguments.

### 5.  Barrett Daffin's Immunity

Defendant Barrett Daffin suggests that it is immune from the claims in this case because, as attorneys, the firm owes no duty to its client's adversaries.  As support for this proposition, Defendant cites several cases that hold attorneys to be immune for actions taken in connection with litigation and claims investigation prior to filing suit: *Taco Bell Corp. v. Cracken*, 939 F.Supp. 528, 532 (N.D. Tex. 1996); *Kruegel v. Murphy*, 126 S.W. 343 (Tex. Civ. App.—Dallas 1910, writ ref'd); *Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.—Houston [1st Dist. 1994, writ denied]; *Martin v. Trevino*, 578 S.W.2d 763, 771 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); *Lewis v. Am. Exploration Co.*, 4 F. Supp. 2d 673 (S.D.Tex. 1998).

Those cases are good—as far as they go.  However, attorney litigation immunity has never been held to exempt attorneys, personally, from sanctions payable to the opposing party for misconduct during litigation under Fed. R. Civ. P. 11(c)(1) (signing of pleadings), 37 (discovery), and *Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) (court's inherent power) or Tex. R. Civ. P. 13 (signing of pleadings), 215 (discovery) and Tex. Civ. Prac. & Rem. Code chapter 10.  *See e.g. Crowe v. Smith*, 151 F.3d 217 (5th Cir. 1998) (assessing sanctions against attorney, personally);

16 / 21

*O'Neill v AGWI Lines*, 74 F.3d 93, 94 (5th Cir. 1996) (sanctions can include attorney reimbursing opposing party for attorney's fees and costs); *Daniels v. Indemnity Ins. Co. of North America*, 345 S.W.3d 736, 741 (Tex. App.—Dallas 2011, no pet.) (sanctions under Tex. R. Civ. P. 13 and Tex. Civ. Prac. & Rem. Code chapter 10); *Werley v. Cannon*, 344 S.W.3d 527, 535 (Tex. App.–El Paso 2011, no pet.) (sanctions for discovery abuse under Tex. R. Civ. P. 215).  *See also, Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 127, 110 S.Ct. 456, 460 (1989) (Rule 11 creates a personal, nondelegable responsibility of the attorney); *Rivera v. Kalafut*, No. 10–41040, 2011 WL 3241967, *1 (5th Cir. July 27, 2011).

Granted, the imposition of sanctions is not designed to be compensatory for the subject matter of the litigation.  Instead, sanctions are generally designed to compensate the opposing party for attorney's fees and expenses related to defending against or prosecuting the offending conduct.  *See generally, Petroleos Mexicanos v. Crawford Enter., Inc.*, 826 F.2d 392, 399 (5th Cir. 1987).  The point is that the litigation immunity claimed by Defendant Barrett Daffin has correlative litigation liabilities for abusive or bad faith conduct.

In her response, Plaintiff states that attorneys are liable for acts taken that are not the basic practice of law.  While this conclusory statement is generally not helpful, Defendant Barrett Daffin, with the burden of proof on this matter, has not cited any authority for the proposition that attorneys are immune from liability under the Texas Debt Collection Act and the Court has found none on its own.  Instead, it appears that attorneys can be held liable under the Texas Act if the evidence shows that they satisfy

the definition of "debt collectors." *Catherman v. First State Bank of Smithville*, 796 S.W.2d 299, 303 (Tex. App.—Austin 1990, no pet.) (finding the question to be an evidentiary issue, with evidence in that case insufficient to find attorneys to be "debt collectors" as a matter of law in response to a request for judgment *non obstante veredicto*).   While the Plaintiff does not rely on the Federal Debt Collection Practices Act, it is instructive that attorneys can be held liable for violations of that Act.  *See e.g.*, *Addison v. Braud*, 105 F.3d 223, 224 (5th Cir. 1997).

Because Defendant Barrett Daffin has not shown that it is entitled to dismissal of the Plaintiff's claims against it based on its claim of immunity, its Motion (D.E. 15), to the extent directed against claims asserted against the firm as debt collectors, is DENIED.

## 6.  Federal Procedure

Plaintiff has asserted a number of objections to the Defendants' motions to dismiss based on a misunderstanding of the Federal Rules of Civil Procedure or the relationship between the current pleading requirements and the state court proceedings.   First, Plaintiff complains that the Defendants' motions to dismiss should not be considered until after they file their respective answers.  This argument runs afoul of Fed. R. Civ. P. 12(b), which permits assertion of the 12(b) defenses prior to filing a responsive pleading and which provides for the alteration of deadlines for doing so.

Plaintiff suggests that, if the jurisdictional defendant (Freddie Mac) has not answered, the Court lacks jurisdiction to adjudicate the motions.  Again, rule 12(b) permits the jurisdictional defendant to file a motion to dismiss prior to answering. Defendant Freddie Mac did in fact join in the motion of Defendant BANA.  D.E. 13.

Thus the Court is not lacking jurisdiction.  Indeed, the Plaintiff has expressly conceded subject matter jurisdiction.  Plaintiff's Second Amended Original Complaint (D.E. 12).

Plaintiff complains that the motions are insufficient as they are not supported by affidavits.  "In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true and affidavits and other evidence . . . may not be considered."  *Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct. 1009, 1011 (U.S. 1947) (citing *Polk Co. v. Glover*, 305 U.S. 5, 9, 59 S.Ct. 15, 16, (1938) and *Gibbs v. Buck*, 307 U.S. 66, 76, 59 S.Ct. 725, 731 (1939)).

Plaintiff asserts that she can incorporate by reference state court pleadings that provide sufficient notice.  She then points out that the only special exception previously asserted by Defendants was directed to the amount of damages.  Once removed, the pleadings are subject to interpretation pursuant to the Federal Rules of Civil Procedure. Compliance with state law is irrelevant if the Court orders re-pleading (as was the case here) or if the pleadings are challenged under the federal rules.  *See generally*, Fed. R. Civ. P. 81(c); *Porte v. Home Federal Sav. & Loan Ass'n*, 409 F. Supp.752 (D. Ill. 1976).

Additionally, a comparison of the state court pleadings and the current federal pleading indicates no appreciable difference in the facts, causes of action, or specificity of the allegations.  Thus incorporation by reference does not assist the Plaintiff as it does nothing to increase compliance with the federal pleading requirements.  The Defendants' previous failure to raise the complaints made available under the Federal Rules cannot constitute waiver.  The Defendants complied with the rules of the forum that Plaintiff chose.  Such compliance with the Plaintiff's choice of rules, if error at all, would

constitute invited error and would not be reversible.  *See generally*, *Druery v. Thaler*, 647 F.3d 535 (5th Cir. 2011) (explaining the invited error doctrine); *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (same).

Plaintiff also suggests that, because Defendants already filed answers in state court (D.E. 1-5, 1-6), they waived their federal rule 12(b) motions.  However, the federal rules only apply after removal.  Fed. R. Civ. P. 81(c)(1).  The federal rules further allow a motion to dismiss for failure to state a claim upon which relief can be granted up to the time of trial.  Fed. R. Civ. P. 12(h)(2).  Defendants have not waived their motions.

Last, Plaintiff contends that her obligation to re-plead was limited to changing the caption and the statement of jurisdiction.  However, at the Initial Pre-Trial Conference, the Court observed that BANA had included an allegation in state court that "Plaintiff's claims are barred because it [sic] has failed to state a claim upon which relief can be granted and deprived BAC of fair notice of its [sic] claim."  D.E. 1-5.  For that reason, the Court ordered the Plaintiff to re-plead to comply with federal pleading requirements.  Those requirements are certainly not limited to the appropriate caption and statement of jurisdiction, at least as compared to the notice pleading rules of Texas.   Plaintiff's procedural objections to the Defendants' motions are OVERRULED.

Plaintiff, in the alternative, asks for leave to amend again.  Having already had an opportunity to amend, Plaintiff's request has marginal appeal.  However, the Court notes that leave to amend should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Plaintiff's prior amendment was done without specific notice of the defects Defendants were targeting.

Thus for the reasons stated above, the Court GRANTS Plaintiff LEAVE TO AMEND to comply with all of the federal pleading requirements with respect to her causes of action for (1) wrongful foreclosure, (2) fraud, (3) Texas Debt Collection Act violations, and (4) breach of contract.  Such amended complaint must be filed within ten (10) days of the date of this ORDER.

The Court GRANTS IN PART the Defendants' motions (D.E. 13, 15) and DISMISSES the Plaintiff's claims for violation of the DTPA.  The COURT DENIES IN PART Defendant Barrett Daffin's motion (D.E. 15), specifically denying its immunity defense.

The Court takes UNDER ADVISEMENT the motions to dismiss (D.E. 13, 15) with respect to Plaintiff's causes of action for (1) wrongful foreclosure, (2) fraud, (3) Texas Debt Collection Act violations, and (4) breach of contract, pending review of Plaintiff's amended complaint to be filed pursuant to this Order.  Plaintiff is cautioned that the Court will not look favorably on any additional requests to amend her pleadings.

ORDERED this 24th day of January, 2012.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE